UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LAUREN SHEEN,

                 Plaintiff,             COMPLAINT

       vs.                              Civil Action #:

DAILY HARVEST, INC., and SECOND BITE
FOODS, INC. d/b/a "STONE GATE FOODS",
SMIRK'S LTD., and JOHN DOE CORPORATIONS
1-5,

                 Defendants.
-------------------------------------------------------X

# INTRODUCTION

Plaintiff Lauren Sheen, by and through her attorney, Law Offices of Mitchell S. Segal, P.C., alleges upon information and belief as follows:

# PARTIES

1. The Plaintiff is a resident of Port Washington, New York in the County of Nassau, and is therefore a citizen of the State of New York.

2. The Defendant, Daily Harvest, Inc., (hereinafter "Defendant" or "Daily Harvest") is incorporated in the State of Delaware with headquarters and principal place of business located at 1115 Broadway, Suite 1105, New York, NY 10010, in the County of New York, State of New York and is therefore subject to the personal jurisdiction in this Court.

3. Defendant sought ingredients from third party food companies, manufactured, packaged, distributed, and/or sold an adulterated and/or contaminated food product, named "French Lentil + Leek Crumbles," to Plaintiff and others. Upon information and belief, Daily Harvest also

developed the recipe for the prepared food product that caused Plaintiff's injuries as alleged in this Complaint.

4. Defendant Second Bite Foods, Inc. d/b/a Stone Gate Foods (hereinafter "Defendant" and/or "Stone Gate") is a domestic corporation incorporated in the State of Minnesota located at 5365 Shore Trail, Prior Lake, MN. 55372. Defendant, Stone Gate manufactures the French Lentil & Leek Crumbles for Daily Harvest. It manufactured the Product at issue in this matter and had knowledge that this product would be distributed in interstate commerce, including New York.

5. Defendant Smirk's Ltd. (hereinafter "Defendant" and/or "Smirk's") is a domestic limited liability company formed under the laws of the State of Colorado with a principal place of business located at 17601 US Highway 34, Fort Morgan, CO 80701.

6. Upon information and belief, Defendant Smirk's supplied tara flour to Stone Gate. Tara flour was supplied by Stone Gate and used in the manufacture of the Defendants' French Lentil & Leek Crumbles Product which has been identified as the cause of the contamination if the Defendant's Product. Smirk's knew that the products that they sold, including tara flour, would be distributed in interstate commerce, including New York.

7. Defendants John Doe 1 – 5, are somehow involved in the supply chain of the supplying ingredients, the manufacture, sale and distribution of the Product and its ingredients and caused the Plaintiff's injuries. Their identities are currently unknown but will be supplied when the Plaintiff ascertains their identities.

8. The Plaintiff purchased and consumed an adulterated and/or contaminated food product, namely prepared "French Lentil + Leek Crumbles", created, manufactured, packaged, distributed, and/or sold by the Defendants (the "Product").

9. The Plaintiff suffered severe injuries by ingesting "French Lentil + Leek Crumbles," manufactured, packaged, distributed, and/or sold by Defendants.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331.

11. Venue is proper in this judicial district pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the district and because the Defendants were subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

12. All of the Defendants engaged in interstate commerce, knew that their products would be distributed across the United States, including New York and as such, have sufficient minimum contacts with the State of New York.

## GENERAL ALLEGATIONS

13. Defendant Daily Harvest instituted a voluntary recall of approximately 28,000 units of French Lentil+ Leek Crumbles produced between April 28 and June 1 17, 2022. Notice was provided on their website.

14. Hundreds of consumers, including the Plaintiff, experienced illness or adverse reactions after consumption of the French Lentil + Leek Crumbles causing various health illnesses including but not limited to gastrointestinal illness to liver and gallbladder dysfunction.

15. The French Lentil & Leek Crumbles was a frozen product distributed to consumers throughout the United States and upon information and belief was

manufactured by Stone Gate.

16. All lots which were manufactured, distributed and sold by the Defendants were recalled.

**Facts Relating to Defendant's Manufacture, Distribution, and Sale of Contaminated, Defective Food Products that Caused Plaintiff's Injuries**

17. Daily Harvest is a direct to consumer food manufacturer, distributor and retailer of over 120 different types of meals and snacks for consumers primarily sold to consumers over the internet through a subscription based model.

18. On the Daily Harvest website it states "Our chef-crafted food is delicious, easy to prep, and built on sustainably sourced fruits and veggies. But that's just the beginning. Daily Harvest is on a mission to make it really easy to eat more fruits & vegetables every day. From seed to plate, were committed to a better food system, one that prioritizes human and planetary health. We are transforming what we eat, what we grow, and how we grow it – one crop (and box) at a time."

19. Defendant marketed the French Lentil + Leek Crumbles as a convenient, pre- made item that can be added to other products, including Defendants, and that the product was easy to prepare and ready in minutes. It will potentially help you live longer.

20. Daily Harvest sells directly to consumers through the internet in addition to some retail stores. From April 28, 2022 to June 17, 2022, approximately 28,000 units of the recalled product were distributed to consumers throughout the United States.

21. On or about June 17, 2022 an email was sent by the Defendant Daily Harvest to its customers acknowledging some customers reported gastrointestinal discomfort after consuming the French Lentil & Leek Crumbles and issued a voluntary recall of the product due to reports of consumers having gastrointestinal illness and liver function issues.

22. On or about July 21, 2022 the Defendant identified the causal ingredient contained in Defendant's French Lentil & Leek Crumbles as "tara flour". Their investigation was conducted by many experts analyzing data from many sources.

23. The Defendant told consumers who may still have the recalled product in their freezers to immediately dispose of it.

24. The recall was made by the Defendant in cooperation with the U. S. Food and Drug Administration.

25. The Defendant Lauren Sheen subscribed to Defendants meal subscription and delivery service on or about March, 2021.

26. On or about the last week in May, 2022 the Plaintiff placed a food order with the Defendant Daily Harvest which included the selection of French Lentil & Leek Crumbles which was delivered to the Plaintiff on June 3, 2022.

27. On June 20, 2022, the Plaintiff consumed the French Lentil & Leek Crumbles which were manufactured, packaged, sold and distributed to her by the Defendants, including upon information and belief the Defendants John Doe Corporations 1-5. Unbeknownst to the Plaintiff, the product contained contaminated ingredients and was defective, dangerous injurious to the Plaintiff's health upon ingestion.

28. The Plaintiff Lauren Sheen became seriously ill after consuming the French Lentil & Leek Crumbles with gastrointestinal injuries, severe abdominal pain and illness.

29. The Plaintiff was drastically ill for several days experiencing diarrhea, mental anguish, severe abdominal pain, and couldn't eat.

30. Over the next several days Plaintiffs symptoms persisted and she went to a general internist. An examination and blood test occurred. The blood test revealed high liver enzymes.

31. Plaintiff continued to experience severe pain, especially when she tried to eat.

32. Over several days the Plaintiff continued to have blood tests taken. They revealed that her liver was severely impacted from the ingestion of the Defendant's Product.

33. The Plaintiff was then referred to a gastrointestinal and liver specialist doctor who took more tests which also revealed excessively high liver enzymes. Plaintiff was told that this condition of excessively high level of liver enzymes could be life threatening with medical care and monitoring for the remainder of her life.

34. The Plaintiff has sustained serious personal injuries as a direct and proximate cause of Defendants' actions in addition to special, incidental and consequential damages including but not limited to past and future damages for bodily injuries, pain and suffering, medical expenses, lost wages, and emotional distress.

## CAUSES OF ACTION

### Strict Liability - Count I

35. Plaintiff repeats and realleges all of the above allegations contained in paragraphs 1-34 above as if fully set forth herein.

36. At all times relevant times hereto, the Defendants were the supplier of ingredients, manufacturer, packager, Distributor and/or seller of the contaminated food product that was purchased and consumed by the Plaintiff.

37. That the Defendants received compensation for the supply of ingredients, manufacture, packaging, sale and distribution of the food product that was delivered to the Plaintiff.

38. The Defendants' product that was manufactured, packaged, sold and distributed to the Plaintiff was contaminated, defective and dangerous for its ordinary course of and intended use by

the Plaintiff.

39. The Product was contaminated, defective and dangerous when it left the control of the Defendants for the delivery to the end consumer, the Plaintiff, and was received by the Plaintiff for its intended use.

40. The Plaintiff prepared and ate the dangerous and contaminated product following the directions for its use and ingestion and had no knowledge or warning that the Defendants' product was dangerous to life.

41. Defendants did not warn the Plaintiff of the dangers of their product resulting from its consumption.

42. The Defendants owed a duty of care to the Plaintiff to make sure that their product was not contaminated, defective and dangerous and could be used by the consumers who purchased this Product for its intended ingestion. The Defendants breached their duty of care.

43. Upon information and belief the Defendants also had, actual and/or constructive knowledge that the Product sold was not safe for consumers including the Plaintiff or if reasonable care had been exercised, should have had this knowledge.

44. As a direct and proximate result of the Defendants actions in the supplying of ingredients, manufacture, packaging, sale and/or distribution of the Product, the Plaintiff, and others suffered serious personal injuries and seeks damages for her present and future injuries as a result of the Defendants' actions, including general, special, incidental and consequential damages in an amount to be determined at trial.

## Breach of Warranty- Count II

45. Plaintiff repeats and realleges all of the above allegations contained in paragraphs "1" through "44" as if fully set forth herein.

46. The Defendants supplied ingredients, manufactured, sold and distributed a food product, specifically, its French Lentil + Leek Crumbles to the Plaintiff and provided express and implied warranties that this product was reasonably safe for human consumption and was not dangerous. The Defendants breached express and implied warranties including the implied warranties of merchantability and/or fitness for a particular use.

47. Specifically, the Defendants through their sale of food to the public and statements made surrounding their business and through conduct of their employees and agents, stated that the ingredients supplied and the food it manufactured, packaged, distributed and/or sold was fit for human consumption and not otherwise adulterated, contaminated or injurious to health.

48. The contaminated, adulterated and life-threatening food that the Defendants created, manufactured, distributed and sold to Plaintiff violates the express and implied warranties of merchantability that the Defendants expressly and implicitly represented and warranted was safe for human consumption and was of merchantable quality.

49. Defendants have breached these warranties and as a direct result of said breach, the Plaintiff suffered present and future personal injuries, including general, special, incidental and consequential damages in an amount to be determined at trial.

## COUNT III – NEGLIGENCE

50. Plaintiff repeats and realleges all of the above allegations contained in Paragraphs "1" through "49" as if fully stated herein.

51. Defendants owed to Plaintiff a duty to use reasonable care in the selection of ingredients, manufacture, packaging, distribution, and/or sale of its food product, and

if the Defendants used such care the Plaintiff would not have been injured by ingesting the Defendant's product.

52. The food prepared, manufactured, sold, packaged and distributed was done so negligently as the Defendants violated reasonable care and monitoring in their selection of ingredients, manufacture, sale, packaging and the distribution of the Product to the Plaintiff and others.

53. Defendants failed to prevent the contamination of the Product and provide any warnings to its potential consumers.

54. Defendants also did not properly train and supervise their employees in proper care, manufacturing, packaging and distribution to prevent the contamination of the Product.

55. As a result of the Defendants' negligent acts, the Plaintiff sustained personal injuries resulting in general, special incidental and consequential damages in an amount to be determined at trial.

## COUNT IV – NEGLIGENCE PER SE

56. Plaintiff repeats and realleges all of the above allegations contained in paragraphs "1" through "55" as if fully stated herein.

57. Defendants have a duty to comply with laws that regulate the manufacture, sale, packaging and distribution of Defendants food products including the Product said laws being any Federal. State or local laws, regulations, safety codes and rules ensuring the safety of the Defendants food products and Product, including the N.Y.S. Agricultural and Markets Law § § 119-a and 200 and the Federal Food Drugs and Cosmetic Acts, 21 U.S.C. § 301 *et seq.*

58. Defendants have violated the above referenced Federal, State, local laws, regulations, safety codes and rules pertaining to the manufacture, distribution, storage, and sale of its food product.

59. As such the Defendants actions or lack thereof make the Defendants per se negligent which was the cause of the Plaintiff's injuries. As such the Plaintiff suffered personal injuries and seeks general, special, incidental and consequential damages in an amount to be determined at trial.

## JURY DEMAND

60. Plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against the Defendants as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by Plaintiff because of Defendants' conduct.

B. Awarding Plaintiff costs and expenses, including reasonable attorneys' fees to the fullest extent allowed by law; and

C. Granting all such additional and/or further relief as this Court deems just and equitable.

DATED: January 17, 2023
Manhasset, New York

**Law Offices of Mitchell S. Segal P.C.**

By: /s/ Mitchell Segal
1129 Northern Blvd., Ste. 404
Manhasset, New York 11030
Ph (516) 415-0100

msegal@segallegal.com